IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**GEORGE SHINAULT**                                                                **PLAINTIFF**

**V.**                                            **NO. 4:17CV177-GHD-JMV**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS, ET AL.**        **DEFENDANTS**

### ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Before the Court are the Defendants' motions for summary judgment. *See* Docs. #51 & #54. Plaintiff has failed to submit a response to the motions, and the deadline to do so has passed. For the reasons forth below, Defendants' motions will be granted and judgment entered in favor of Defendants.

### I
### Factual and Procedural Background

After breaking his ankle at a different facility in March 2017, inmate George Shinault was transferred to the Unit 42 hospital at the Mississippi State Penitentiary ("MSP") for treatment, where it was determined that he needed a surgery consult. He awaited a surgery consult in MSP's infirmary for approximately one month, and he claims that when the consult was finally provided, surgery was no longer an option due to the delay. Shinault asserts that his bones healed out of alignment during the delay, which causes him to suffer with pain and arthritis. He also alleges that medical staff at MSP applied a cast to his leg that blistered his skin, thereby causing him further injury.

Shinault subsequently filed an action under 42 U.S.C. § 1983 alleging that his constitutional rights were violated by the improper medical treatment and delay. Named as defendants in this action are the Mississippi Department of Corrections ("MDOC") and Dr.

Gloria Perry, along with medical providers Mrs. Willie Knighten[1], Angela Brown[2], Dr. Pamela Jarrett, and Dr. Woodall. Shinault asks the Court to award him monetary damages and disability upon his release from prison.

## II
## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation and internal quotation mark omitted). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. That is, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Beck*, 204 F.3d at 633. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential

---

[1] Ms. Knighten was incorrectly identified as "Willie McKnight" in the complaint.

[2] Angela Brown was incorrectly identified as "Angelo Brown" in the complaint.

2

element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes] . . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### III
### Summary Judgment Evidence

In the early morning hours of March 14, 2017, while George Shinault was being housed in the Issaquena County Correctional Facility, he jumped off a fixture approximately ten feet high and was thereafter observed limping to the bunk area. Doc. #54-2 at 22. The same day, he was transported to the emergency room at the Mississippi State Penitentiary ("MSP") and was there evaluated by Nurse Angela Brown, who placed him on a medical hold and ordered an x-ray of his ankle. *Id.* at 5-9. After the x-ray showed a fracture to Shinault's left ankle, he was admitted to the infirmary, provided a cast and crutches, and advised not to place weight on his ankle. *Id.* at 14-17. He was also provided pain medication. *Id.* at 7, 15, and 22.

Medical staff immediately requested an orthopedic consultation for Shinault's ankle. *See, e.g., id.* at 24 and 29. This orthopedic consult remained pending during Shinault's stay at the infirmary. *See id.* at 24, 29, 48, 51, 56, 59, 67, 89, 101, 105, 113, 117, 121, 122, 131, 141 and 143. While the consult was pending, Shinault remained on a medical hold where he received continuous medical treatment, including the regular administration of pain medication. *See, e.g., id.* at 5-158. On March 17, 2017, a few days after Shinault injured himself, a second x-ray was taken that showed the alignment of Shinault's fractured ankle as stable. *Id.* at 36 and 268.

On March 17, 2017, two small blisters were noticed on Shinault's foot, and Defendant Jarrett removed his cast and treated the blisters. *Id.* at 39-40 and 42-43. The blisters were subsequently treated until they healed. *Id.* at 42-43, 46, 48, 51, 53, 55, 57, 58, 63, 67, 69, 74, 77, 78, 82, 85, 89, 94, 99, 100, 101, and 105.

On April 11, 2017, Shinault was examined by Dr. William Porter, an outside orthopedist. *Id.* at 279-80. Dr. Porter's notes of this visit indicate that he discussed range of motion exercises with Shinault, as well as the importance that the injury remain non-weight bearing. *Id.* at 280. It was noted that there was "minimal evidence of healing" to the injury at that time. *Id.* at 279-80. Dr. Porter requested to see Shinault for a follow-up in a month. *Id.* at 280. Shinault was discharged from the MSP infirmary on April 12, 2017, at which time he was able to walk with the assistance of crutches. *Id.* at 164-65. Upon discharge, Shinault was prescribed a two-month lay-in with a tray.[3] *Id.* at 169.

Shinault had a follow-up visit with Dr. Porter on May 16, 2017, at which time Dr. Porter noted the fracture's alignment was without change, and that the injury was "healing well." Doc. #54-2 at 184-85, 288-289. He instructed Shinault to continue to be non-weight bearing and to

---

[3] A "lay-in" food tray allows a prisoner to be served meals in his cell. *See, e.g., Barrett v. MDOC*, No. 2:06-CV-271-KS-MTP, 2007 WL 1139538, at *1 (S.D. Miss. Apr. 17, 2007).

return in one month for a follow-up appointment. *Id.* at 288-89. On June 8, 2017, Shinault was seen by an outside prosthetics provider for evaluation of his need for orthopedic shoes, which he had requested on May 29, 2017. *Id.* at 189, 293, and 297.

On July 7, 2017, Shinault requested to be cleared from his medical hold, stating that his ankle was fine. *Id.* at 212, 305. A nurse's note from late July indicates that Shinault walked steadily and normally, with no need for crutches. *Id.* at 211. Upon a physician's subsequent evaluation, Shinault was released from medical hold and designated a "Med[ical] Class 2," indicating he was then "physical[ly] capable of most work assignments." *Id.* at 213-14.

Shinault saw Dr. Porter for a final follow-up visit on August 8, 2017, at which time he was discharged from Dr. Porter's care. *Id.* at 219-221. After his discharge, Shinault continued to receive regular treatment for his complaints of ankle pain, including additional x-rays. *See id.* at 223-255. A September 2017 radiology report indicates that Shinault's ankle displayed evidence of an old fracture, but that no acute fracture or dislocation was seen. *Id.* at 323. A nurse's note from September 25, 2017, indicates that Shinault was provided his orthopedic shoes and was fully ambulatory. *Id.* at 238. Thereafter, Shinault complained in December 23, 2017, that he had reinjured his ankle after being pushed down. *Id.* at 252-53. A December 28, 2017, x-ray showed that Shinault's had some soft tissue swelling to his ankle, but that the joint alignment was maintained, and that there was no evidence of acute fracture. *Id.* at 341.

## IV
## Exhaustion

Because Shinault was incarcerated when he filed this case, the Prison Litigation Reform Act ("PLRA") applies to this case. *See* 28 U.S.C. § 1915. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). It "applies to all inmate suits about prison life" and must be adhered to "irrespective of the forms of relief sought and offered through administrative avenues." *Id.* at 532; *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The Fifth Circuit has held that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The PLRA does not require a particular level of specificity in a prisoner's administrative grievances. *Johnson v. Johnson*, 385 F.3d 503, 517-19 (5th Cir. 2004). It requires only that the prisoner give officials a sufficient amount of information to provide them with "fair notice" of the problem. *Id.* at 517. Beyond this basic level of compliance mandated by the statute, inmates are required to comply with the grievance procedures of the facility at issue. *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"); *see also Woodford v. Ngo*, 548 U.S. 81, 91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]").

The Mississippi Department of Corrections has been granted the statutory authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this authority, it has established an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. *See* Miss. Code Ann. § 47-5-801. The ARP process is a two-step process that begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the complained of incident. *Howard v. Epps*, No. 5:12CV61-

KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss.May 29, 2013); *see also* Doc. #54-3. The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id.* If accepted, the grievance is forwarded to the appropriate official, who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response, which completes the ARP process. *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

According to Shinault, he knew that he had blisters on his leg from the cast the date the cast was removed on March 17, 2017. *See, e.g.*, Doc. #14 at 3:46 – 4:10. He also claims that he knew after his first meeting with Dr. Porter on April 11, 2017, that his leg was healing incorrectly. *See* Doc. #1 at 9-10, 12-13, and 17. In fact, Shinault advised MSP medical staff of the problem with his ankle upon his return from his visit with Dr. Porter. Doc. #54-2 at 165. Therefore, Shinault knew of the alleged damage caused by the delayed orthopedic treatment as of April 11, 2017. *Id.*

However, Shinault did not file his first grievance about his ankle issues until July 12, 2017, well after the thirty-day deadline required by ARP policy. *See* Doc. 1 at 3-4; Doc. #51-1 at 4. Therefore, he failed to properly exhaust his administrative remedies. *See, e.g., Trevino v. Herrera*, 61 Fed. Appx. 922, 2003 WL 1107319, at *1 (5th Cir. Feb. 20, 2003) (per curiam) (unpublished) (citing *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001) (noting failure to meet deadline is failure to exhaust administrative remedies). Moreover, that grievance was rejected as unclear, with instructions to Shinault to resubmit the grievance with more specific information. Doc. #51-1 at 2. Shinault untimely filed three incomplete grievances, and after

each was filed, he received a letter notifying him of the deficiencies in his grievance and providing him an opportunity to resubmit the grievance. Doc. #51-1 at 4-9. However, Shinault never submitted a proper ARP grievance in accordance with the policies promulgated by MDOC. Accordingly, Shinault failed to properly exhaust the administrative grievance process with regard to his claims, and Defendants are entitled to summary judgment.

## V
## Medical Treatment

The Court otherwise notes that the law provides that a prisoner has a constitutional right to medical care that is infringed only when a defendant's failure to provide adequate treatment is the result of "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference is a subjective knowledge of a risk of serious harm and a disregard of the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner can demonstrate "deliberate indifference by showing that an official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (citation and internal quotation marks omitted). Where the constitutional issue is the delay in treatment, a prison official faces liability only when the prisoner can demonstrate that the delay was caused by the official's deliberate indifference, which resulted in substantial harm. *See id.*

Typically, where a medical professional has chosen a course of action, courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . (which) remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3rd Cir. 1979) (citation omitted). Therefore, an inmate's disagreement with a provider's choice of medical treatment will not support a claim of deliberate

8

indifference. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). This is true even if the physician's conduct is professionally negligent or amounts to medical malpractice. *Daniels v. Williams*, 474 U.S. 327 (1986); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support §1983 cause of action).

Here, Shinault admits that after fracturing his ankle, he was promptly transported to MSP's medical unit, where x-rays were performed, and he was provided with crutches, pain medication, a cast, and continuous medical treatment. Additionally, his medical records demonstrate that upon noticing blisters on his foot, Defendant Jarrett removed Shinault's splint and treated his wounds, which were continuously monitored and treated until they healed. Moreover, Shinault has not demonstrated that the lapse in time between his ankle injury and orthopedic consult resulted in any substantial harm to him. Rather, his medical records indicate that his injury was healing well.

Additionally, Shinault has not alleged that any named Defendant delayed contacting the orthopedist for a consult, nor has he alleged that any named Defendant was responsible for the delay in the appointment with the specialist. Rather, he concedes that a consult request was immediately placed, even if the appointment was not held for approximately one month. Therefore, Shinault's allegations fail to indicate that any named defendant had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. To the extent that Shinault alleges that one or more of the named Defendants should have pressed harder for an earlier appointment, or that they simply failed to recognize that his foot was allegedly healing incorrectly, his allegations raise at most an inference of negligence or malpractice. Such allegations fail to state a constitutional claim. *See, e.g., Estelle*, 429 U.S. at 105 ("[A] complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Varnado*, 920 F.2d at 321.

Accordingly, Shinault has failed to establish that he has suffered a cognizable constitutional injury because of the deliberate indifference of any named Defendant, and all Defendants are entitled to summary judgment.

## VI
## Conclusion

For the reasons as set forth above, it is **ORDERED** that Defendants' motions for summary judgment [51][54] are **GRANTED**, and that summary judgment is entered in favor of all named Defendants. A final judgment consistent with this Order will issue today.

**SO ORDERED**, this 4ᵗʰ day of December, 2018.

_____
SENIOR U.S. DISTRICT JUDGE